# 24-960-cr

To be argued by:
**COLLEEN P. CASSIDY**

_____
_____

United States Court of Appeals

For the Second Circuit

_____

Docket No. 24-960-cr

_____

UNITED STATES OF AMERICA,

Appellee,

-against-

CHINWENDU ALISIGWE, a/k/a SEALED DEFENDANT 1,

Defendant-Appellant.

_____

APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

**REPLY BRIEF FOR DEFENDANT-APPELLANT
CHINWENDU ALISIGWE**

_____

Federal Defenders of New York, Inc.

 Appeals Bureau

52 Duane Street, 10th Floor

New York, New York 10007

Tel. No.: (212) 417-8742

*Attorney for Defendant-Appellant*
**CHINWENDU ALISIGWE**

**COLLEEN P. CASSIDY**,

 *Of Counsel*

_____
_____

# TABLE OF CONTENTS

I.  The government's argument that a search at the border "never" requires a warrant is incorrect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Two circuits have applied *Riley* to limit the border search exception for cellphone searches to searches for contraband or customs violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  The *Riley* analysis applied by the Ninth and Fourth Circuits would preclude the fraud investigator's warrantless search for and recording of evidence of bank fraud on Alisigwe's cellphone under the border search exception . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.  The district court's finding that the searches here were not "routine" is not clearly erroneous. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.  The Good Faith Exception Does Not Apply to the Searches Here . . . 17

VI.  Appellant concedes that his *Kisor* claim is foreclosed in this Court by *United States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024), but preserves the argument for further review . . . . . . . . . . . . . . . . . . . . . . . 22

VII.  The district court failed to make findings sufficient to support its enhancement for perjury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

i

# TABLE OF AUTHORITIES

*Cases*

*Alasaad v. Mayorkas,*
   988 F.3d 8 (1st Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Davis v. United States,*
   564 U.S. 229 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*Kisor v. Wilkie,*
   139 S. Ct. 2400 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*S.E.C. v. Dorozhko,*
   574 F.3d 42 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Abreu,*
   514 F. App'x 13 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Aguiar,*
   737 F.3d 251 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Agudelo,*
   414 F.3d 345 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*United States v. Aigbekaen,*
   943 F.3d 713 (4th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 11

*United States v. Banks,*
   55 F.4th 246 (3d Cir. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Ben-Shimon,*
    249 F.3d 98 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Beverly,*
    5 F.3d 633 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Cano,*
    934 F.3d 1002 (9th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8

*United States v. Chalarca,*
    95 F.3d 239 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Flores-Montano,*
    541 U.S. 149 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Fox,*
    No. 23 Cr. 227 (NGG), 2024 WL 3520767
    (E.D.N.Y. July 24, 2024). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 20, 21

*United States v. Hendrickson,*
    26 F.3d 321 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Irving,*
    452 F.3d 110 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Levy,*
    803 F.3d 120 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 18

*United States v. Lincecum,*
    220 F.3d 77 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 27

*United States v. Livoti,*
    196 F.3d 322 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Montoya de Hernandez,*
    473 U.S. 531 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*United States v. Nkongho,*
    107 F.4th 373 (4th Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*United States v. Rainford,*
    110 F.4th 455 (2d Cir. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Ramsey,*
    431 U.S. 606 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

*United States v. Riley,*
    573 U.S. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Rosario,*
    988 F.3d 630 (2d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*United States v. Shonubi,*
    998 F.2d 84 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Smith,*
    673 F. Supp. 3d 381 (S.D.N.Y. 2023) . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 11

*United States v. Sultanov,*
    No. 1:22-cr-149(NRM), 2024 WL 3520443 (E.D.N.Y. July 24, 2024) . . 2, 3, 4

iv

*United States Sentencing Guidelines*

U.S.S.G. § 3C1.1, app.n.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Other Authorities*

Homeland Security Investigations, "What We Investigate,"
https://www.dhs.gov/hsi/cornerstone# . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Jennifer Daskal, *The Un-Territoriality of Data*,
125 Yale L.J. 326, 365-77 (2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Orin Kerr & Robert Wisberg, *Searching Computers at the Border*
(Stanford Law School Zoom Event, 3/3/22)
 https://www.youtube.com/watch?v=WflaKYW1jUI. . . . . . . . . . . . . . . . . . . . 11

This reply brief is submitted by Appellant Chinwendu Alisigwe to respond to arguments made in the government''s brief opposing his appeal.

## I. The government's argument that a search at the border "never" requires a warrant is incorrect.

The government broadly argues: "Routine or otherwise, searches at the border 'never' require a warrant or probable cause." G.Br. 15. The government relies for this claim on *United States v. Ramsey*, 431 U.S. 606, 619 (1977). *Id*. *Ramsey* does not support the government's sweeping claim. *Ramsey* addressed the search by a Customs agent of eight envelopes with bulky contents in mail from Thailand, all of which bore addresses typed by the same typewriter. Given the heft of the letters and their origin, a known source of heroin, the agent suspected the envelopes contained drugs. 431 U.S. at 609-10. The agent opened the envelopes pursuant to a regulation allowing Customs to inspect incoming international mail when it had "reasonable cause to suspect" that the mail included illegally imported

1

merchandise, but which "flatly prohibit[ed], under all circumstances, the reading of correspondence absent a search warrant." 431 U.S. at 623.

The Supreme Court upheld the regulation allowing a border search of mail for contraband supported by "reasonable cause to believe" the envelopes contained illegal material, *as limited by* the provision prohibiting the reading of correspondence without a warrant. *Id.* at 622. That provision, the Court explained, saved the statute from violating the First Amendment: "Here envelopes are opened at the border only when the customs officers have reason to believe they contain other than correspondence, while the reading of any correspondence inside the envelopes is forbidden." *Id*. at 623-24. It was the prohibition against reading correspondence that saved the regulation from violating the First Amendment component of the Fourth Amendment claim. *Id.*[1] Thus, a proper reading of *Ramsey* makes

---

[1] The First Amendment arguments of *amici curiae* are properly before the Court, contrary to the government's claim in footnote 5 of its brief. As *Ramsey* makes clear, a warrantless search in violation of the Fourth Amendment can implicate First Amendment rights as well. *See also United States v. Sultanov*, No. 1:22-cr-149(NRM), 2024 WL 3520443, at *25 (E.D.N.Y. July 24, 2024)("After *Riley,* it is undeniable that the contents of a traveler's cell phone implicate core First Amendment activities.")

2

plain that the border search exception is limited and that sometimes a warrant is required even at the border. Specifically, it supports appellant's argument that where the search is not for contraband or customs violations, but for evidence of other crimes, a warrant is required. Indeed, *Ramsey*'s discussion of the history of the border search exception explicitly ties it to searches for contraband and customs violations. *Id.* at 620-22.

Moreover, *Ramsey* recognized that the border exception "is like the similar 'search incident to lawful arrest' exception," *Id*. at 621. This supports applying *Riley*'s analysis to limit the border search exception just as *Riley* limits the exception for a search incident to arrest: in some cases, including this one, a warrant is required.

As three district courts in this Circuit have now held, the need to intercept contraband and control the border cannot justify the enormous intrusion into a traveler's entire life that a cellphone search involves. *Sultanov*, 2024 WL 3520443 at *22; *United States v. Smith*, 673 F. Supp.3d 381, 387 (S.D.N.Y. 2023)(JSR); *United States v. Fox*, No. 23 Cr. 227 (NGG), 2024

WL 3520767 (E.D.N.Y. July 24, 2024). If there is probable cause to believe

the traveler is involved in criminal activity,  border agents can obtain a

warrant quickly, something made easier by "recent technological

advances." *Riley*, 573 U.S. at 401.  Moreover, *Riley* holds that a warrant is

required for a cellphone search incident to arrest, but other circumstances,

such as exigency, "may still justify a warrantless search of a particular

phone." *Id*. at 401-02; *Sultanov*, 2024 WL 3520443  at *16. Likewise, a

warrantless cellphone search would be allowed at the border where exigent

circumstances exist, like a terrorist threat. *Id.* The government's response to

these decisions is that "they are against the weight of authority," relying on

cases in other Circuits that allow cellphone searches at the border. G.Br. 22-

23. However, the Circuits vary as to whether and when a cellphone search

is allowed at the border after *Riley.*

4

**II.    Two circuits have applied *Riley* to limit the border search exception for cellphone searches to searches for contraband or customs violations.**

The government overstates its case when it says that "every circuit to have addressed the question has concluded that," notwithstanding *Riley*, "a warrant is *not* required for the search of a cellphone at the border" and that there is a "consensus" in the Circuits that manual searches of cellphones are valid without a warrant or reasonable suspicion. G. Br. 14-15. Actually, the legal landscape in the Circuits is more nuanced than that. The Fourth and Ninth Circuits have rejected the argument that any warrantless cellphone search is justified at the border and hold instead that a warrantless border search is limited to a search within the scope of the border search exception – a search for contraband or customs violations. *United States v. Cano*, 934 F.3d 1002, 1013, 1016 (9th Cir. 2019); *United States v. Aigbekaen*, 943 F.3d 713, 721 (4th Cir. 2019); *United States v. Nkongho*, 107 F.4th 373, 382 (4th Cir. 2024).

5

The Ninth Circuit explains that "the border search exception is a 'narrow exception' that is limited in two important ways": it may be conducted by "customs or immigration officials, but not general law enforcement officers, such as FBI agents," and "must be conducted to 'enforce importation laws,' and not for 'general law enforcement purposes.'" *Cano*, 934 F.3d at 1013. Thus, in searching a cellphone without a warrant, "border officials are limited to searching for contraband only; they may not search in a manner untethered to the search for contraband." *Id*. at 1019. On this reasoning, *Cano* upheld only the agents' original look through the images on the cellphone for digital contraband – child pornography – but held that the agents' further searching for and recording of text messages and phone numbers for evidence exceeded the scope of a proper border search. *Id.* This is consistent with *Ramsey*'s conclusion that the Customs rule allowing a search of mail envelopes for contraband – but prohibiting the reading of correspondence – fell within the border search exception.

The Fourth Circuit also requires a nexus between a warrantless cellphone search at the border and the purpose of the border search. "[T]he government may not invoke the border search exception on behalf of its generalized interest in law enforcement and combatting crime." *Aigbekaen*, 943 F.3d at 721. Rather, a warrantless forensic search of a cellphone at the border requires "individualized suspicion of an offense that bears some nexus to the border search exception's purposes of protecting national security, collecting duties, blocking the entry of unwanted persons, or disrupting efforts to import or export contraband."*Aigbekaen*, 943 F.3d 721, quoted in *Nkongho*, 107 F.4th at 382.  In *Aigbekaen*, the court held the warrantless searches of the defendant's cellphone and laptop unlawful where they were justified only by probable cause to believe that he had committed domestic crimes. 943 F.3d at 721. In *Nkongho*, on the other hand, the cellphone search was affirmed because the government had probable cause to believe that the defendant was conspiring to export illegal munitions. *Id*. at 383.

7

The Ninth and the Fourth Circuits simply apply the *Riley* analysis to the border search context. Given the massive quantity of personal information carried on cellphones, the extraordinary intrusion worked by a cellphone search must be justified by the specific purpose of the search warrant exception. *Aigbekaen* applied *Riley's* rule that "the scope of a warrant exception should be defined by its justifications," and held that "a warrant exception will not excuse a warrantless search where applying the exception would 'untether the rule from the justifications underlying it.'" 943 F.3d at 720, quoting *Riley*, 573 U.S. at 386. *Cano* applied the same analysis to hold that warrantless cellphone searches at the border are limited to searches for contraband, reasoning: "Were we to give the government unfettered access to cell phones, we would enable the government to evade the protections laid out in *Riley* 'on the mere basis that [the searches] occurred at the border.'" *Cano*, 934 F.3d 1002, 1020 (9th Cir. 2019) (citation omitted).

8

**III.** **The *Riley* analysis applied by the Ninth and Fourth Circuits would preclude the fraud investigator's warrantless search for and recording of evidence of bank fraud on Alisigwe's cellphone under the border search exception.**

*Cano* and *Aigbekaen* are directly relevant here because the searches of Alisigwe's cellphone were not for contraband, but for evidence of bank fraud and identity theft. And they were not conducted by customs agents, but by an ordinary fraud investigator from Homeland Security Investigations. While the government suggests that such agents can conduct border searches because HSI's portfolio includes transnational crime and violations of the customs and immigration laws, G.Br. 27, their mandate is much broader than that and covers financial crime in general. The Homeland Security Investigations website, cited by the government as showing that it focuses on transnational crime and customs and immigrations violations, G.Br. 27, actually says: "HSI's investigations are wide ranging – our cases include drug and weapons smuggling, cyber and financial crime, illegal technology exports and intellectual property crime." It further states that "almost every crime has a financial nexus" and that

9

"HSI works closely with the Department of Justice to investigate and prosecute financial crimes that exploit traditional and non-traditional financial systems." Homeland Security Investigations, "What We Investigate," https://www.dhs.gov/hsi/cornerstone#. And specifically to the point here, Agent Tallio testified that when he conducted the searches in this case, he was working for the Document and Benefit Fraud Task Force and was "looking for evidence of fraudulent transactions" and Alisigwe's use of "multiple identities." A. 229, 260-61. He was investigating this case of bank fraud and identity theft, not customs or immigration violations.

We contend – as three district courts in this Circuit have now held – that *Riley*'s analysis demands a warrant to search a cellphone at the border, given its extraordinary intrusion into a traveler's entire life and the very minimal extent to which cellphone data can be said to cross the border with the cellphone. *Smith*, 673 F. Supp. 3d at 394-95[2] At a minimum, this Court

---

[2]Although the Fourth and Ninth Circuit allow a warrantless search for child pornography on a cellphone as contraband, as Judge Rakoff explained in *Smith*, even contraband on a cellphone does not enter the country on the cellphone, but is stored elsewhere, on a server or in the cloud. "Stopping the cell phone from entering the

should follow the analyses of the Fourth and Ninth Circuits limiting warrantless cellphone searches at the border to searches for contraband or customs violations because their reasoning applies *Riley*'s rule that a search warrant exception cannot "untether the rule from the justifications underlying [it]." 943 F.3d at 720. Moreover, this rule is consistent with *Ramsey* and other Supreme Court cases delineating the justifications for the border search exception. *E.g., United States v. Flores-Montano*, 541 U.S. 149, 153 (2004)(government's "inherent authority to protect . . . its territorial integrity" includes a strong "interest in preventing the entry of unwanted persons and effects"); *United States v. Montoya de Hernandez,* 473 U.S. 531, 544 (1985)(border agents are charged "with protecting this Nation from entrants who may bring anything harmful into this country, whether that be communicable diseases, narcotics, or explosives").

---

country would not, in other words, mean stopping the data contained on it from entering the country." *Smith*, 673 F. Supp. 3d at 394, citing Orin Kerr & Robert Wisberg, *Searching Computers at the Border* (Stanford Law School Zoom Event, 3/3/22) https://www.youtube.com/watch?v=WflaKYW1jUI. *See also* Jennifer Daskal, *The Un-Territoriality of Data*, 125 Yale L.J. 326, 365-77 (2015) (discussing the challenges the diffusion of data poses to firm concepts of territoriality).

The government has no answer to the compelling reasoning of the Fourth and Ninth Circuit decisions, asserting only that "neither holding is the law in this Circuit. " G.Br. 26. But neither is the government's preferred case, the First Circuit decision in *Alasaad v. Mayorkas*, 988 F.3d 8 (1st Cir. 2021) – giving carte blanche for open-ended cellphone searches at the border. This Circuit has not yet ruled on this question. The reasoning of *Cano* and *Aikbekaen* is far more persuasive and applies *Riley's* teaching that "generally" – not only in the case of searches to arrest – warrant exceptions depend on assessing "the degree to which [the search] intrudes upon an individual's privacy" against "the degree to which it is needed for the promotion of legitimate governmental interests." *Riley*, 573 U.S. at 385. *Alasaad*, on the other hand, simply held that *Riley* itself did not address border searches and refused to apply its analysis to them.  988 F.3d at 17.

The government's argument that this Court's decision in *United States v. Levy*, 803 F.3d 120 (2d Cir. 2015), is "controlling" here is patently incorrect. G. Br. 26-27. *Levy* involved border agents' search of a notebook,

12

not a fraud investigator's search of the contents of a cellphone. This Court affirmed the search in *Levy* of a man returning to the United States to face criminal charges, based on reasonable suspicion that the notebook contained evidence of the crime. This Court framed the search as incidental to an ordinary border search: it recognized that border searches should focus on "contraband, dutiable merchandise, immigration fraud, and terrorism," but ruled that border agents did not have to "ignore tangible evidence of a federal crime." *Id.* at 124.

*Levy* is inapposite, first because it is not a cellphone search case. *Riley* expressly distinguished the search of a cellphone, "which differs in both a quantitative and qualitative sense" from searches of "other objects" like wallets and notebooks. 573 U.S. at 392-93. *Riley* holds that exceptions to the warrant requirement depend on "assessing, on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests." 573 U.S. at 385. It is precisely because of the

extraordinary intrusion a cellphone search entails that the justification for searching other personal effects is not sufficient to support a warrantless search of one under *Riley*. Therefore, reliance on a case affirming an ordinary border search of personal effects does not logically avoid the *Riley* analysis for a cellphone search. As *Riley* reasoned in distinguishing a cellphone search from the search of the contents of an arrestee's pockets, given the "vast quantities of personal information" on a cellphone, a cellphone search "bears little resemblance to" a search of physical objects. *Id*. at 386.  Here, the extraordinary intrusion of a cellphone search – not the leafing through a single notebook – must be justified by the purpose of the border search exception and within the scope of that exception.

Second, unlike *Levy*, this search did not involve border agents confronted with evidence of crime and deciding not to ignore it, but an ordinary fraud investigator going out to the airport to conduct a purported "border search" for evidence and evade the warrant requirement. This

14

search for evidence of bank fraud and identity theft was neither within the scope of the border search exception nor incidental to it.

**IV.  The district court's finding that the searches here were not "routine" is not clearly erroneous.**

The district court correctly found that the search of Alisigwe's cellphones were not "routine" border searches and that reasonable suspicion that Alisigwe committed some crime was required to search and record evidence from his phones as Agent Tallio did. Even aside from *Riley* and its heightened standard for cellphone searches, a non-routine border search has long required reasonable suspicion that the traveler was smuggling contraband. *Montoya de Hernandez*, 473 U.S. at 541-44 (detention of traveler beyond routine border search required reasonable suspicion that she was smuggling  drugs in alimentary canal); *United States v. Irving*, 452 F.3d 110, 124 (2d Cir. 2006)(reasonable suspicion of child pornography supported non-routine search of film and diskettes found in luggage). The district court here upheld the searches, even non-routine as they were, as based on reasonable suspicion that Alisigwe was involved in identity

15

fraud. We submit that this was legal error, as argued, and that the search of

a cellphone requires a warrant, or at the very least, that a warrantless

border search is limited to a search for contraband.[3]

However, the government contends that the district court's finding

was wrong and that this was a "routine" border search, requiring no

reasonable suspicion, because the search was "manual" and not "forensic."

G. Br. 23-25. There is no meaningful distinction between a "forensic" search

and a "manual" search for evidence that involves photographing all

evidence found. Searching a cellphone is an extraordinary intrusion: this is

the controlling authority of *Riley*, which itself involved what the

government calls a "manual" search. 573 U.S. at 379 (one officer accessed

the phone and "noticed that some words were preceded by letters" that

appeared to be slang for a gang; a detective then "went through" the phone

"looking for evidence" and "files that caught his eye" were videos that

---

[3] As argued, the logical application of *Riley* to this line of cases means that, as
*Cano* and *Aigbekaen* held, the border search exception to a warrant is limited to a search
for contraband or customs violations.

included yelling the name "Blood"). To the extent that out-of-Circuit cases cited by the government suggest that a manual cellphone search is not extremely invasive, *Riley* has overruled them.

Indeed, the government's argument is at odds with even the pre-*Riley* law of this Circuit, which held the notebook search in *Levy* and the search of film and diskettes in *Irving* to be non-routine. What the government proposes would allow breathtakingly broad surveillance of anyone who travels abroad: any government agent could search through any traveler's cellphone at the airport, with no reason whatsoever, and photograph whatever catches his eye, for any purpose – for potential use in an investigation, for political reasons, or just for his own entertainment.

## V.    The Good Faith Exception Does Not Apply to the Searches Here.

The government contends that the district court was justified in holding that the good faith exception applied to Agent Tallio's searches because (1) neither the Supreme Court nor this Circuit had held that a cellphone search at the border required a warrant; (2) this Circuit's cases

17

upholding border searches of objects like the notebook in *Levy*, 803 F.3d at 124, "strongly indicated that border searches of cellphones are permissible;" and (3) "multiple circuits" had held that a cellphone search at the border did not require a warrant. G. Br. 30-31. The government is incorrect for several reasons. None of these reasons provide a basis for good faith reliance on precedent.

First, the good faith exception requires "objectively reasonable reliance on binding appellate precedent," *Davis v. United States*, 564 U.S. 229, 232 (2011), that is, precedent of the Supreme Court or this Circuit. *United States v. Aguiar*, 737 F.3d 251, 261 (2d Cir. 2013); *S.E.C. v. Dorozhko*, 574 F.3d 42, 45 (2d Cir. 2009). No "binding appellate precedent" had held that a warrantless search of a cellphone was categorically lawful at the border -- even when conducted by a non-border agent fraud investigator who went out to the airport to conduct the search. And whatever *Levy* and other cases upholding searches of objects may have suggested in *dicta* about the "plenary" search powers at the border (G.Br. 31), they were far

18

from binding appellate precedent on the legality of warrantless cellphone searches because they did not involve cellphone searches at all.

Second , *Riley* -- which *is* binding precedent -- applied a general rule to cellphone searches: "[W]e generally determine whether to exempt a given type of search from the warrant requirement 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" 573 U.S. at 385. It concluded that cellphone searches are different from other searches and require a more substantial justification. *Id.* at 386. Specifically, it refused to apply the longstanding rule allowing the warrantless search of physical objects carried by an arrestee "to searches of data on cell phones, " which "place vast quantities of personal information literally in the hands of individuals." *Id.* To assume that *Riley*'s analysis for cellphone searches would not apply to any warrantless cellphone search is not a reasonable or "good faith" reading of *Riley.*

19

Third, while some courts had continued to uphold warrantless searches of cellphones at the border, others had not. The Fourth and Ninth Circuits had applied *Riley* to restrict warrantless searches of cellphones to searches for contraband and prohibit searches for general crimes by agents other than border agents.

Fourth, this was not a *bona fide* border search. It was conducted not by border agents stationed at the airport, but by a "document and benefit fraud" agent investigating identity theft and bank fraud who went out to the airport to set up a purported border search and evade the warrant requirement. Agent Tallio's actions, like those of the agent in *United States v. Fox*, at \*20, were " a deliberate, tactical choice to evade the warrant requirement that would otherwise apply to a search of [Alisigwe's] cellphone," not undertaken "with an objectively reasonable good faith belief that [his] conduct [was] lawful." *Davis*, 564 U.S. at 238. These facts were ignored by the district court, which denied the suppression motion without a hearing.

20

The government's efforts to distinguish *Fox*, 2024 WL 3520767, are unavailing. G. Br. 28-29. In *Fox*, as in this case, the cellphone search was conducted by a DHS agent investigating benefits, who ordered the seizure and search of defendant's cellphone at the border to look for evidence of fraud. Yes, there were additional actions undertaken in *Fox* – the agents took the cellphone offsite and held it for several days to conduct a lengthier forensic search. But the court held that "the initial manual search" and seizure of the phone at the airport was " 'a deliberate tactical choice' to evade the warrant requirement that would otherwise apply to search the contents of Defendant Fox's cellphone," and the good faith exception did not apply to that. *Id*. at *19-21.

The government now claims that Tallio was investigating "transnational crime" because the identity fraud involved a false passport. G.Br. 29, 32. But Tallio testified that he worked for the Benefits Fraud Task Force and went to the airport the first time to search Alisigwe "looking for evidence of fraudulent transactions" and his use of "multiple identities." A.

21

229, 260-61. The second search was two years later, when Tallio's bank

fraud investigation was well under way.  Tallio said nothing about

investigating transnational crime, only bank fraud, identity theft and

money laundering.

## VI. Appellant concedes that his *Kisor* claim is foreclosed in this Court by *United States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024), but preserves the argument for further review.

The government is correct that this Court has upheld the validity of

the intended loss commentary to the loss guideline after *Kisor v. Wilkie*, 139

S. Ct. 2400 (2019), and that the claim is foreclosed in this Court. *United

States v. Rainford*, 110 F.4th 455, 475 (2d Cir. 2024). Appellant preserves the

issue for further review, given the conflict in the Circuits. *See United States

v. Banks*, 55 F.4th 246, 257 (3d Cir. 2022).

## VII. The district court failed to make findings sufficient to support its enhancement for perjury.

The government acknowledges the strict standard required to

support a perjury finding, and that whether the court's specific findings are

22

sufficient to support perjury is reviewed *de novo*. G. Br. 42. But then in a bait and switch, it poses the question as "the factfinder's choice between ... two permissible views of the evidence," which "cannot be clearly erroneous." G.Br. 45. None of the cases the government cites for this claim involve findings of perjury, but all involve ordinary fact-finding. *United States v. Chalarca*, 95 F.3d 239, 244 (2d Cir. 1996); *United States v. Hendrickson*, 26 F.3d 321, 339 (2d Cir. 1994); *United States v. Beverly*, 5 F.3d 633, 642 (2d Cir. 1993).

The district court's perjury determination was not a choice between "two permissible views of the evidence." Unlike the typical perjury finding – and the only perjury cases the government cites (G.Br. 42-46) -- no one contradicted Alisigwe's testimony that he was threatened. Cf. *United States v. Lincecum*, 220 F.3d 77, 81 (2d Cir. 2000)("the affidavit's falsity was exposed" by the contrary testimony of government witnesses); *United States v. Shonubi*, 998 F.2d 84, 88 (2d Cir. 1993)(the district court "credited prosecution witnesses and discredited Shonubi's contrary assertions");

*United States v. Livoti*, 196 F.3d 322, 325 (2d Cir. 1999) (defendant police

officer called his fellow officers "knowing that they would lie" and they

directly "contradicted" the government eye-witnesses); *United States v.*

*Abreu*, 514 F. App'x 13, 15 (2d Cir. 2013)(defendant's affidavit was properly

ruled perjury where district court "credited three government witnesses

who gave consistent, copious testimonies" directly contradicting his claim

that the documents seized were not in plain view).

Indeed, the court itself believed that Alisigwe may have been

threatened, as he testified. The only statements the court identified as false

– which is required for a perjury determination, *United States v. Rosario*, 988

F.3d 630, 634 (2d Cir. 2021); *quoting United States v. Ben-Shimon*, 249 F.3d 98,

104 (2d Cir. 2001) – were Alisigwe's testimony that he did not know the

identity of either the man threatening him from Nigeria, or the local

handler whom he met in the park to transfer cash. The court's conclusion

that these facts were false was based only on its view that they were

implausible.  No testimony or other evidence contradicted Alisigwe's

testimony that the man never identified himself or his local accomplice by name. But there was nothing inherently implausible about this aspect of Alisigwe's account. If he was extorted to commit these crimes by someone in Nigeria who threatened his family – which the court acknowledged may have been true -- it is simply not implausible that the man extorting him would not identify himself or his accomplice in Queens by name. Indeed, it would be unlikely that such an extortionist would introduce himself and his co-conspirators by name.

The court's view that this was implausible was based on no more than a gut feeling that the story "did not hang together," A. 427, which is not sufficient to support a perjury finding. A perjury finding requires the court to identify the specific statements that were willfuly false as to a material matter, and explain it conclusion. *United States v. Agudelo*, 414 F.3d 345, 349 (2d Cir. 2005); *Rosario*, 988 F.3d 630, 634 (2d Cir. 2021). Its explanation that uncontradicted facts "just didn't hang together" and were

25

"preposterous" is far too subjective and cannot justify a perjury finding, where the only falsehoods specifically identified were entirely plausible.

Moreover, the government acknowledges that Judge Caproni made no specific finding that Alisigwe lied about any "material" facts. G. Br. at 46. The government contends that the court's finding that he intended to obstruct the proceedings was a good enough substitute. *Id*. The government is incorrect. Alisigwe's intent to obstruct is a separate question from materiality.  A district must find "that the defendant 1) willfully 2) *and* materially 3) committed perjury, which is (a) the intentional (b) giving of false testimony (c) as to a material matter.'" *United States v. Agudelo*, 414 F.3d 345, 349 (2dCir. 2005)(emphasis added).

It would have been difficult to find that the statements the court thought were false were material in this case. The government agrees that any false testimony is only material to the extent that, if believed, it would have "'tended to influence or affect' whether he could present a duress defense." G. Br. 46, citing U.S.S.G. 3C1.1, app. n. 6. Alisigwe's testimony

that the man who threatened him was a stranger and that he never knew the name of the local handler he met in the park – the only statements the court found implausible – had no tendency to influence the court's decision whether he could present the duress defense. The court accepted Alisigwe's testimony as true for purposes of that question and rejected the defense on the legal ground that he could have reported the threatening men to the authorities. The case cited by the government, *United States v. Lincecum*, 220 F.3d 77, 81 (2d Cir. 2000), only demonstrates this point. There, the district court found that the defendant's account of the facts "would have demonstrated a violation of his constitutional rights." *Id.* Here the opposite is true: the court ruled that Alisigwe's account of the facts did not legally support the defense of duress.

## CONCLUSION

For the foregoing reasons and the reasons stated in Appellant's opening brief, his conviction should be vacated, the evidence obtained, directly and indirectly, from the cellphone searches should be suppressed

27

and a new trial ordered. In the alternative, Appellant's sentence should be

vacated and the case remanded for resentencing.

Dated:    New York, New York
          December 18, 2024

                    Respectfully submitted,

                    FEDERAL DEFENDERS OF NEW YORK, INC.
                        APPEALS BUREAU

                    By: _*Colleen P. Cassidy*_____
                    **COLLEEN P. CASSIDY**
                    Attorney for Defendant-Appellant
                        **CHINWENDU ALISIGWE**
                    52 Duane Street, 10th Floor
                    New York, New York 10007
                    Tel.: (212) 417-8742

28

## CERTIFICATE OF SERVICE

I certify that a copy of this Reply Brief has been served by ACMS on the United States Attorney/S.D.N.Y.; **Attention: MEREDITH C. FOSTER, ESQ.,** Assistant United States Attorney, 26 Federal Plaza, New York, NY 10278.

Dated:     New York, New York
           December 18, 2024

_Colleen P. Cassidy_
**COLLEEN P. CASSIDY**
Assistant Federal Defender

29

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This reply brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains 4,916 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a monospaced typeface using **Corel WordPerfect** X6 with **14 characters per inch in Palatino Linotype** type style.

Dated:     New York, New York
           December 18, 2024


_Colleen P. Cassidy_
**COLLEEN P. CASSIDY**
Assistant Federal Defender